MARK FANG, ATTORNEY AT LAW, APC
Mark Fang, Esq.; SBN 199073
mfang@markfangapc.com
William G. Short, Esq.; SBN 132479
bshort@markfangapc.com
215 East Daily Dr., Suite 9
Camarillo, CA 93010
Telephone: (805) 383-2788
Facsimile: (805) 388-9488

Attorney for Plaintiff EVERFLOW TECHNOLOGY CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERFLOW TECHNOLOGY CORPORATION, incorporated under the laws of the Republic of China (Taiwan),<br><br>    Plaintiff,<br><br>vs.<br><br>MILLENIUM ELECTRONICS, INC., a California corporation,<br><br>    Defendant. | Case No.: 07-CV-05795-JF (HRLx)<br><br>**OPPOSITION TO MOTIONS FOR ORDER QUASHING SUBPOENA**<br><br>Date: September 23, 2008<br>Time: 10:00 a.m.<br>Ctrm: Hon. Howard R. Lloyd, Magistrate |

I.    **BACKGROUND**

    A.    <u>Pleading and Writ of Attachment.</u>

Plaintiff EverflowTechnology Corp. (hereinafter "EVERFLOW"), a specialized fan manufacturer located in Taiwan, entered into a series of agreements to deliver computer cooling products at the request of Defendant Millennium Electronics, Inc. (hereinafter "MEI"). In exchange, MEI agreed to wire payment for each shipment of goods within 45

days. MEI ordered the goods, delivery occurred, but MEI failed to pay in excess of $2,000,000.00 owed to EVERFLOW.

EVERFLOW began questioning MEI by email in July 2007 about MEI's failure to pay for the shipped goods and about MEI's payment plans. On about July 29, 2007, the amount MEI owed EVERFLOW was in excess of $1,000,000.00. Between July and September, MEI made a number of proposals and promises to begin to pay down the outstanding debt, including to pass-through directly to EVERFLOW MEI's profit derived from MEI's sales of EVERFLOW's products. Rather than debt reduction during these negotiations, however, MEI's debt doubled. Litigation followed.

EVERFLOW filed a simple contract action against MEI. EVERFLOW promptly sought, and this Court granted, an order for the issuance of a Writ of Attachment securing $1,894,176.27, in anticipation of EVERFLOW's likely verdict in excess of this amount. Enforcement of this Writ, however, has so far yielded less than $1,000 in attachable funds. (Declaration of Mark Fang, ¶ 2)

B. **Early Discovery Revealed Alter Ego and Active Looting of MEI Assets.**

EVERFLOW subpoenaed MEI's bank records from Heritage Bank of Commerce, Inc. (hereinafter "Heritage"), and County Bank, Inc. (hereinafter "County.") These bank records reveal wholesale looting of MEI's funds by MEI's principals between June 2007 and February 2008, the very time that MEI was "negotiating" with EVERFLOW to pay down its $2,000,000.00 debt. Specifically, these records document wire transfers out of MEI's account to James Loro personally between June 19, 2007, and August 29, 2007, in the amounts of $136,396.75, $200,000.00 and $202,885.16, for a total of $539,281.91. (Exhibit

1-1, 1-2). In addition, these records also reflect wire transfers out of MEI's account to Peralta Investment Group (variously "PI", "PIG", "PERALTA") between October 29, 2007, and February 7, 2008, in the amounts of $200,000.00, $100,000.00, $100,000.00, $100,000.00, $100,000.00, $200,000.00, and $21,031.33, totaling $821,031.33. (Exhibit 1-3 through 1-7)

EVERFLOW subpoenaed the bank records of the principals, the Loros, and their closely held companies, from Heritage Bank of Commerce, Inc. (hereinafter "Heritage") and County Bank, Inc. (hereinafter "County"). The Motions currently before the Court seek to quash these subpoenas.

Concurrently, EVERFLOW is filing a Motion for Leave to file a First Amended Complaint that names the parties identified below as Alter Ego defendants, and adds claims for fraud, unfair competition, and fraudulent transfer. (Exhibit 2)

## II. PARTY DEFENDANT AND MOVERS

Defendant Millennium Electronics, Inc. ("MEI") is a currently non-funded California corporation wholly owned and controlled by JAMES LORO (hereinafter "J. LORO") and his wife MELVA LORO (hereinafter "M. LORO"). (Exhibit 3).

Moving party JAMEL ENTERPRISES, LLC (hereinafter "JAMEL") is a California limited liability corporation also wholly owned and controlled by J.LORO and M. LORO, as well as NADENE LORO SNAPP (hereinafter "N. LORO") (Exhibit 4-1, 4-2), who appears to be their daughter. JAMEL, like defendant MEI, is also in the business of "designing and manufacturing components and subsystems products in the electronics industry." (Exhibit 4-2).

Moving Party "MILLENNIUM INTERNATIONAL" (hereinafter "MILLENNIUM") is an entity of unknown status. Both J. LORO and MEI, at different times, registered for use of this fictitious business name. (Exhibit 5)

Moving Party "LOROCO SALES, INC" (hereinafter "LOROCO") was a wholly owned subsidiary of MEI whose sole purpose was to act as MEI's sales representative. (Exhibit 6). It filed a Certificate of Dissolution on December 19, 2007. (Exhibit 7-2).

Moving party J. LORO is the CEO, CFO, and Director, and one of two shareholders of MEI (Exhibits 3 and 8) and LOROCO (Exhibit 7-1), Manager of JAMEL (Exhibit 4-1, 4-2), and the onetime registrant of the fictitious business name of "MEI, International" and "Millennium Electronics" (Exhibit 5).

Moving party M. LORO is the Secretary, Director, and one of two shareholders of MEI (Exhibit 3 and 8-1), was the Secretary and one of two shareholders of LOROCO (Exhibit 7-1 and Exhibit 3), and was a Manager of JAMEL (Exhibit 4-1).

Moving party N. LORO is the Operations Manager of MEI (Exhibit 8-1), and JAMEL (Exhibit 4-2), and was the Operations Manager of LOROCO (Exhibit 7-1),

PERALTA INVESTMENT, LLC, is not a moving party, and is an entity of unknown form. It has neither filed with the California Secretary of State, nor registered as a fictitious business name with the County of Santa Clara, though it has and uses a Morgan Hill bank checking account. It appears that J. LORO and M. LORO have control of this entity in that they both have check writing privileges. (Exhibit 9). The sum of $821,000.00 was wired out of MEI's bank account to this entity between October 2007 and February 2008. (Exhibit 1).

III.  **SUBPOENAS TO HERITAGE BANK AND COUNTY BANK.**

   A.   <u>The Lack of Notice was de minimus and, in any case, corrected.</u>

4
OPPOSITION TO MOTIONS TO QUASH

The Moving Parties <u>correctly</u> point out that EVERFLOW completely neglected to provide notice to the affected parties prior to serving the subpoenas on Heritage and County. This was an oversight that should not have happened. By way of explanation – and not to excuse – counsel had begun to view these individuals and entities as alter egos and knew that notice to MEI's counsel, was practical notice to these other parties.

However, rather than telephone or write the undersigned to point out the lack of notice, the Moving parties instead prepared the two motions and filed them. This was the <u>first notice</u> EVERFLOW had of this service error. (In the meantime, it should be noted, counsel for defendant MEI <u>has also been counsel for JAMEL</u> (see Exhibit 11, a document Mr. Figueiredo's firm filed <u>on behalf of JAMEL</u> in July 2007). Mr. Figueiredo telephoned the undersigned shortly after the subpoenas were issued, and discussed the subpoenas but did not object to them, nor did he mention that they were improperly noticed. Finally, he said nothing about the impending Motions to Quash.)

In any case, EVERFLOW corrected the notice error. EVERFLOW amended the subpoenas to show a new, continued production date, and properly served the amended subpoenas on the moving parties. (Exhibit 10). This procedural error has now been corrected without any prejudicial harm to the moving parties.

**IV.    SUBPOENA OF RECORDS IS NOT IRRELEVANT,OR BURDENSOME.**

A.    <u>The records are relevant to the Fraud, Alter Ego, Unfair Competion and Fraudulent Transfer claims.</u>

1.    Jamel Enterprises, LLC. ("JAMEL")

JAMEL is owned and controlled by the same individuals that owned and controlled the now moribund MEI. This family, J. LORO, M. LORO, and N. LORO, continue in the

same business activity using JAMEL as their new vehicle, while avoiding creditors who are owed millions of dollars through their past business entities. Since the demise of MEI, JAMEL has changed the business description it provided for itself to the Secretary of State from simply "investment" in February 2007, to the same business MEI engaged in: "Design and manufacturing of components and subsystems and products in the electronics industry" in July 24, 2007. (Exhibit 4-2). To further confuse customers with whom they are continuing to do business, JAMEL also adopted on July 26, 2007, the confusingly similar fictitious business name of "Millennium Advanced Solutions." (Exhibit 11).

    2.    Loroco Sales, Inc. ("LOROCO")

As a wholly owned sales arm of MEI, LOROCO's finances are almost indistinguishable from MEI's. As an example, MEI's accountants prepared their <u>unaudited</u> annual financial statements for MEI on a consolidated basis with LOROCO. (Exhibit 6, page 1040). MEI itself apparently did not distinguish between its own finances and those of LOROCO. They were largely two sides of the same business. The review of LOROCO's records is necessary and relevant, if for no other reason, to sift out from the MEI Consolidated Financial Statements what belongs to MEI and what belongs to LOROCO.

    3.    James Loro, Melva Loro and Nadene Loro

EVERFLOW has discovered wire transfers from MEI's bank Heritage directed to the personal account of James LORO totaling $539,281.91, and to the likely LORO family-controlled PERALTA totaling $821,031.33. In addition, EVERFLOW has noted that MEI's Heritage bank records include over $1,300,000 in further, unidentified, outgoing wire transfers during the early part of 2007. In conjunction with the identified wire transfers directed to the personal account of James LORO, and to the LORO-controlled PERALTA,

EVERFLOW seeks records from the other LOROs and LORO controlled entities involved in the same business to determine if any were the recipient of this $1,300,000.

4.  Broader claims in the proposed First Amended Complaint.

In addition, in light of the claims contained in the proposed First Amended Complaint, these bank records have become even more relevant. Admittedly, this proposed amendment comes <u>after</u> the discovery requests were made. However, the First Amended Complaint will likely be operative shortly, and it clearly supports the relevance of the records requested.

As for <u>fraud</u>, JAMEL has continued in the market place under the fictitious business name of "Millennium Advanced Solutions," doing the same kind of business, and controlled and directed by the same LORO family, all the while claiming that the debts of MEI cannot be paid. The JAMEL and LORO bank account records are a reasonable source of information to prove this allegation.

As for <u>alter ego</u>, the relevance of the JAMEL bank records relates to the failure to adequately separate the funds of the separate entities, the LORO family's treatment of corporate assets as their own, diversion of MEI assets, and the use of MILLENNIUM ADVANCED SOLUTIONS as a shell.

Finally, as for the new claim of <u>fraudulent transfer</u>, the relevance of the JAMEL bank records for proving fraudulent transfers of MEI assets to JAMEL and the LORO family.

B.  <u>The Bank Subpoenas for records are not burdensome.</u>

JAMEL and LOROCO complain that this garden variety subpoena for business bank records is burdensome. As discussed above, the purposes for the subpoena are important

and supported by the scope of the pleading, at least as amended. Whatever burden there may be is easily supported by the importance of the review of these records.

As for the bank records of the LOROs, the same holds true. The LORO's have been actively involved in the business of MEI, LOROCO and JAMEL since these family run entities were formed. MEI has transferred, with no indication of consideration, over $500,000 to James LORO at a time when MEI was in dire financial straights. Further, James and Melva LORO are both check signers for a mysterious, unregistered "LLC" to whom – during the same liquidity crises – MEI wired $821,031.33. Nadene LORO, for her part, is the "Operations Manager" of MEI (Exhibit 8-1), LOROCO (Exhibit 7-1) and JAMEL (Exhibit 4-2). In such a central role, she would likely also be a recipient of money from MEI if it was being looted during 2007.

In response to the privacy issues raised by the LORO's, EVERFLOW is certainly willing to exclude tax returns from the bank production. In addition, EVERFLOW has offered to enter into a protective order (as noted below) to further protect other sensitive information. These suggestions would fully protect the interests that the LORO's cite while at the same time allow EVERFLOW to adequately conduct discovery toward the recovery of the assets that rightfully belong to MEI and its creditors.

C.      <u>EVERFLOW has offered to enter into a protective order.</u>

EVERFLOW, by and through its counsel, has offered to counsel for Moving Parties the use of a protective order to address any concerns they may have that trade secrets, and other confidential information may be protected. (Exhibit 12). Counsel for the Moving Parties has not responded to this offer. Nonetheless, EVERFLOW continues to make this

offer available as a way to ameliorate any legitimate concerns the Moving Parties may have.

## V.  CONCLUSION

EVERFLOW is owed about $2,000,000 by MEI. Discovery so far has provided strong indications that MEI is an alter ego of the Moving parties, and that the principals of MEI looted MEI's bank account. EVERFLOW sought to obtain bank records from the LORO's and its closely held companies, such as JAMEL. EVERFLOW admittedly failed to properly notice the subpoena.

Neither Mr. Figueiredo nor Counsel for the Moving Parties made any effort to meet and confer. Mr. Martin simply filed this motion. Once EVERFLOW understood its error, it amended the subpoena production date and re-served with proper notice. Further, EVERFLOW is in the process of obtaining leave to file a First Amended Complaint with broader, more far reaching claims and issues, than the original simple contract action. (MEI was presented the proposed First Amended Complaint, and refused to stipulate to its filing.) If the complained of subpoenas are determined to be too broad, the most equitable solution is simply to condition their effect until the First Amended Complaint is ordered filed.

Dated:   September 2, 2008            MARK FANG ATTORNEY AT LAW, APC



By:_____
Mark Fang, Esq., Attorney for Plaintiff